IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 4:25-cr-55 |
| | ) | |
| MALIK RASHUN HUGHES, | ) | |
| a/k/a "Lik" and "Slicc" | ) | |
| | ) | |
| Defendant. | ) | |

POSITION OF UNITED STATES ON SENTENCING

In accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, *Guidelines Manual,* § 6A1.2, the United States of America, through its attorneys, Todd W. Blanche, Acting Attorney General, and D. Mack Coleman, Assistant United States Attorney, hereby represents that it has reviewed the probation office's presentence report (hereinafter "PSR") and that it does not have any objections to the PSR.  For the reasons to follow, and the reasons to be offered during the sentencing hearing, the United States respectfully requests that the Court impose a sentence of 51 months.

PROCEDURAL HISTORY

On September 8, 2025, a grand jury in Newport News returned a one-count indictment, charging the defendant with unlawfully possessing a firearm as a convicted felon.  (ECF No. 1.) In a separate federal case, the defendant was charged with multiple misdemeanors for running the gate at Naval Station Norfolk.  (*See* Case No. 2:25-mj-205.)  January 15, 2026, the defendant pleaded guilty to a global resolution of both cases by agreeing he was guilty of one count of firearm by felon and one count of unlawful entry upon a naval installation.  (ECF No. 17-24.)  The instant sentencing was schedule for February 19, 2026.  (ECF No. 21.)

<u>OFFENSES OF CONVICTION</u>

On or about the December 16, 2024, the defendant illegally possessed a loaded Taurus G3 9mm semiautomatic handgun (serial number ADK767472).  (SOF ¶ 2.)

On the afternoon of December 16, 2024, police officers from the Newport News Police Department observed an unlicensed driver driving a Honda Civic bearing license plate ending in 8434.  Because the police knew that the driver had a revoked license in Virginia, they initiated a traffic stop in the area of Jefferson Avenue and Oyster Point Road in Newport News.  (SOF ¶ 3-4.)

The defendant was the front passenger in the vehicle at the time of the stop.  The police conducted a safety sweep of the driver, two passengers, and their immediate area in the vehicle.  (SOF ¶ 5.)  Among other things, the police recovered a Taurus G3 9mm semiautomatic handgun (serial number ADK767472), which was concealed from common observation between the defendant's arm and torso.  The weapon was loaded with a large-capacity magazine containing sixteen 9mm cartridges.  (SOF ¶ 6.)

Earlier on December 16, 2024, the above-described Taurus G3 9mm handgun had been stolen from the vehicle of an employee of the Newport News Shipyard.  M.W. reported the firearm stolen, and police photographed damage to his Nissan Altima, including a broken passenger window.  (SOF ¶ 7.)

At the time of his arrest, the defendant was in possession of a firearm despite knowing he had been previously convicted of a felony punishable by more than one year in prison and knowing that he was prohibited from possessing firearms.  (SOF ¶ 8.)  The defendant had a recent prior felony conviction and signed paperwork acknowledging his status as a felon.  (SOF ¶ 9.)

2

Separately, on July 19, 2025, the defendant stole a 2018 Chevy Silverado from the driveway of a residence on 26th Street in Virginia Beach.  The defendant crashed the Silverado into a third party near Naval Station Norfolk and fled the scene of this collision.  While fleeing, the defendant unlawfully entered Naval Station Norfolk.  He did so by ignoring directions from the sentry at the entry control point.  The sentries at the gate activated a Hardened Access Control System, so the defendant drove the Silverado into the center median.  Police attempted to stop the vehicle, but the defendant fled on foot.  He was later apprehended by officers during this flight. The defendant was searched incident to arrest and found in possession of a Glock 19 air soft gun and a half-consumed bottle of tequila in his backpack.  (SOF ¶ 11-16.)

THE DEFENDANT'S BACKGROUND

The defendant is a 27-yeear-old male from Mississippi who has significant ties to Newport News.  He is a documented gang member of the Rolling 60s Crips.  (PSR pg. 2.)

UNRESOLVED OBJECTION TO GANG INFORMATION

The defendant objects to the PSR listing him as a member of the Rolling 60s Crips.  he "acknowledges associating with individuals believed to be in a gang but does not admit to be affiliated with the gang."  (PSR Additional Addendum.)

The defendant is a gang member.  He is documented by the Newport News Police Department based on his own public admissions.  (Gov. Ex. 1.)  If this were not enough, he has multiple tattoos that corroborate his membership in the gang, including a "60" and "RNC."  (PSR ¶ 61.)  The tattoos and public admissions are not mere association.  They are significant and permanent ties to the criminal organization.

As a threshold matter, this objection does not impact the advisory sentencing guidelines. And by law, "No limitation shall be placed on the information concerning the background,

3

character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. The Probation Officer reviewed the police reports and discovery for this matter, and decided to include as part of her independent investigation, that Newport News Police Department believes that Jayvon Woods is a gang member. There is nothing novel or untoward about this being included in the PSR. It is a fact that is reflected in the law enforcement reports for this investigation.

To dispute facts set forth in the PSR, "[t]he defendant has an affirmative duty to make a showing that the information in the presentence report is unreliable, and [to] articulate the reasons why the facts contained therein are untrue or inaccurate." *See United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990) (citing *United States v. Mueller*, 902 F.2d 336, 346 (5th Cir. 1990) (finding that the defendant presented no evidence in rebuttal to the PSR)); see also *United States v. Randall*, 171 F.3d 195, 211 (4th Cir. 1990). Without an affirmative showing that the PSR is inaccurate, the Court is "free to adopt the findings of the [presentence report] without more specific inquiry or explanation." *Terry*, 916 F.2d at 162 (quoting *Mueller*, 902 F.2d at 346).

POSITION ON SENTENCING AND ARGUMENT

The United States recognizes that a sentencing court may not presume that a sentence within the advisory guideline range is reasonable; however, the guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). Title 18, United States Code, Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. The

United States respectfully requests that the Court impose a 51-month sentence of incarceration. This represents a guideline sentence to account for several aggravating sentencing factors.

*First*, the nature and circumstances of the offense are aggravating. The defendant was a convicted felon armed with a stolen and loaded handgun. He was riding around with another felon, Alonta Scott, who was also carrying a stolen and loaded handgun. Scott was recently sentenced by this Court to 51 months for being a felon in possession of this handgun. (E.D. Va. No. 4:25-cr-42.) That is not all. The backseat passenger was a documented gang member found in close proximity to a third gun with an extended magazine, which was recovered in plain view on the floorboard of the vehicle. In total, the three men had three guns and 46 rounds of ammunition. The offense of conviction is aggravating and calls of a guideline sentence of incarceration. The defendant's conduct as described in the statement of facts is inherently dangerous to those around him and the community more broadly. The defendant possessed a destructive device with significant capacity to harm others – especially when possessed in conjunction with other felonious conduct.

*Second,* the Glock 21 found under the driver's seat was stolen during a robbery, double murder, and shooting of a third victim on December 1, 2024 – only two weeks before the traffic stop where the defendant was found with the weapon. (Gov. Ex. 2.) In the plea agreement, the United States agreed not to seek a cross reference to the homicide in the instant case. However, the Court should understand the full context for this firearm and the broader investigation of the defendant for this additional conduct that may be charged in a later brought case. The defendant's DNA was found on the stolen firearm from the scene of the double murder, shooting, and robbery.

*Third*, the defendant's gang membership and criminal record suggests he is at a serious risk to reoffend.

*Fourth*, while incarcerated at Western Tidewater Regional Jail pending sentencing, the defendant was disciplined for an assault on another inmate. (Gov. Ex. 3.) The defendant's conduct is yet another example of worrying indicators that he has violent tendencies that pose a risk to the community. Incarcerating the defendant will protect the public and limit his ability to inflict harm on others.

*Fifth*, the Court should consider general and specific deterrence in fashioning a sentence for the defendant. With respect to general deterrence, the public must look at the actions of the defendant and know that these offenses will be not tolerated. Individuals inclined to consider committing crimes like those of the defendant must be made to pause to think about the consequences that follow. As for specific deterrence, a guideline sentence of incarceration is necessary to specifically deter this defendant. He has , shown that the shock of being arrested, stopped by police, spending time in prison, and/or ordered by a Court not to violate certain conditions has little deterrent effect on him. Such a sentence is necessary to instill respect for the law and hopefully prevent this defendant from engaging in a similar course of conduct upon his release.

CONCLUSION

The defendant's crime is serious and calls for an equally significant sentence of incarceration.  For the foregoing reasons and others to be provided during the sentencing hearing, the United States respectfully requests a sentence of 51 months.

Respectfully submitted,

Todd W. Blanche
Acting Attorney General

By:  _____/s/_____
D. Mack Coleman
Assistant United States Attorney
Eastern District of Virginia
Newport News Division
11815 Fountain Way, Suite 200
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
mack.coleman@usdoj.gov

7

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 15th day of April 2026, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic

notification of such filing to the following:

Daymen Robinson
Defense Counsel

I HEREBY CERTIFY that on this 15th day of April 2026, I sent a true and correct copy

of the foregoing to the following by electronic mail to the United States Probation Office.


/s/

D. Mack Coleman
Assistant United States Attorney
Eastern District of Virginia
Newport News Division
11815 Fountain Way, Suite 200
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
mack.coleman@usdoj.gov

8